**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MOHAMED WARSAME** | : | |
| | : | **Case No. 2:25-cv-00868** |
| **Plaintiff,** | : | |
| | : | **Judge Algenon L. Marbley** |
| **v.** | : | |
| | : | **Magistrate Judge Kimberly A. Jolson** |
| **SOUTHEAST INC, et al.,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

**Opinion & Order**

This matter comes before the Court on Defendant Angela M. Courtwright's ("Courtwright") and Defendants Margaret Hittie ("Hittie"), Bill Lee ("Lee"), and Southeast Healthcare, Inc's ("Southeast") Motions to Dismiss Plaintiff Mohamed Warsame's ("Plaintiff") First Amended Complaint (ECF No. 29) under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF Nos. 37, 38). For the reasons set forth below, Courtwright's motion (ECF No. 37) is **GRANTED**. Similarly, Hittie, Lee and Southeast's motion (ECF No. 38) is **GRANTED in part and DENIED in part**.

## I. BACKGROUND

The instant case arises under the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203. The Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215, and related Ohio claims. Plaintiff is a resident of Ohio who was previously employed by Southeast as a Case Manager and Community Psychiatric Supportive Treatment employee ("CPST") before being terminated on February 18, 2025. (ECF No. 29 at 1). Southeast is a non-profit healthcare provider that operates throughout eight different Ohio counties. Hittie worked as Plaintiff's direct

supervisor and, according to Plaintiff, served as the direct link between Plaintiff and human resources. (*Id.* at 2). Melissa Miller was the chief human resources officer for Southeast and was the "principal decision-maker in wage investigations and leave determinations." (*Id.*). According to Plaintiff's amended complaint, Lee is the CEO "with oversight authority over HR and compliance companies." (*Id.*). Finally, Courtwright is outside counsel for Southeast "who enforced communication restrictions and termination procedures." (*Id.*). Plaintiff alleges that each of these named defendants "had actual or constructive knowledge" of Plaintiff's alleged protected activity and "participated in, approved, or failed to prevent retaliatory conduct." (*Id.*).

Plaintiff's factual allegations in support of his claims are summarized as follows: Plaintiff's employment at Southeast, he consistently submitted accurate mileage reimbursement reports, however, on January 10, 2025, he submitted mileage documentation that was then withheld by payroll for several weeks, causing Plaintiff financial hardship; following this incident, between January 24 and February 4, 2025, Plaintiff elevated "wage and leave concerns" to HR and his supervisors citing his delay in reimbursement and requesting reasonable accommodations in the form of flexible scheduling for health reasons; Melissa Miller ("Miller"), the HR director for Southeast, opened an investigation on February 4, 2025, after receiving Plaintiff's concerns, and froze Plaintiff's mileage reimbursement, "evidencing retaliatory motive;" HR for Southeast then, scheduled mandatory meetings with Plaintiff on February 11 and 12, 2025, which conflicted with his medical needs, and denied Plaintiff's request to record or document such meetings; two days later, on February 14, 2025, Plaintiff's access to Southeast's systems was disabled and all communications were then routed to outside counsel. (*Id.*). The following week, Southeast issued Plaintiff a termination letter on the basis of dishonesty and reported the allegation against Plaintiff

to the Ohio Department of Job and Family Services ("ODJFS") to initiate unemployment disqualification proceedings. (*Id.*).

On August 18, 2025, the Ohio Unemployment Compensation Review Commission ("UCRC") reversed the finding of dishonesty and ruled that Plaintiff was discharged without just cause, "confirming pretext." (*Id.* at 3). One month later, the U.S. Department of Labor, Wage and Hour division, interviewed both Plaintiff and Southeast regarding wage irregularities and allegedly substantiated Plaintiff's prior complaints against Southeast. (*Id.*). Plaintiff alleges that as a result of this situation, his professional reputation has suffered, he has experienced financial loss, suffers from insomnia and anxiety, and faces continued barriers to employment. (*Id.*).

Plaintiff filed the initial complaint on August 28, 2025, against Southeast, Courtwright, and Ice Miller, LLP ("Ice Miller") after receiving leave to proceed in form pauperis. (ECF Nos. 5, 6). Subsequently, Plaintiff filed the amended complaint/more definite statement on October 21, 2025. (ECF No. 29). On December 2, 2025, Defendant Angela Courtwright filed a motion to dismiss for failure to state a claim, (ECF No. 37), followed by a second motion to dismiss for failure to state a claim by Defendants Margaret Hittie, Bill Lee and Southeast Healthcare on December 3, 2025, (ECF No. 38). Plaintiff filed a consolidated response to both motions, (ECF No. 39), and Defendants replied in turn. (ECF Nos. 40, 41). Both Motions are now ripe for review and the Court takes each one in turn.

## II. STANDARD OF REVIEW

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) evaluates the sufficiency of the complaint, and permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a motion tests the complaint's cause

of action, and is "not a challenge to [its] factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Thus, in evaluating a Rule 12(b)(6) motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff, accept [all] allegations as true, and draw all reasonable inferences in [its] favor." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation marks and citation omitted). This favorable treatment of the complaint applies to well-pleaded factual allegations. Complaints cannot rest on legal conclusions, as "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" are insufficient; similarly, factual assertions cannot rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). In sum, the facts alleged must be sufficient to "raise a right to relief above the speculative level," such that the complaint states a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 555, 570; *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). Beyond the complaint itself, courts may also consider exhibits attached to the complaint, "public records, items appearing in the record of the case and exhibits attached to the defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430.

Additionally, it is well-settled that a document filed *pro se* is "to be liberally construed," and that a *pro se* complaint "however inartfully pleaded, must be held to less stringent standards than a formal pleading drafted by lawyers…" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)(quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Sixth Circuit, however, has recognized that the Supreme Court's "liberal construction" case law does not "abrogate basic pleading essentials" in *pro se* suits. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## III. LAW AND ANALYSIS

### A. Motion to Dismiss by Defendant Angela Courtwright

Courtwright argues that Plaintiff's amended complaint fails to plead any facts that sufficiently state a claim against Courtwright, and more specifically, fails to plead any claims against her, as it does not contain any allegations of wrongdoing by Defendant Courtwright. (ECF No. 37). In his consolidated response, Plaintiff argues that his amended complaint "identifies [Courtwright's] operational enforcement of communication restrictions and termination procedures during Plaintiff's leave, contributing to the lockout and adverse acts." (ECF No. 39 at 7). Plaintiff further offered that "if further particulars are desired, amendment suffices in light of the screening posture." (*Id.*).

As noted above, courts should hold *pro se* complaints to a less stringent standard than those drafted by attorneys. *Erickson*, 551 at 94; *see* II. Standard of Review. But, "[a] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Leisure v. Hogan,* 21 Fed.Appx. 277, 278 (6th Cir. 2001). This means "the less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations." *Id.*; *see also Livingston v. Ohio Bureau of Motor Vehicles*, No. 2:13-CV-0047, 2013 WL 5297249, at *2 (S.D. Ohio Sept. 19, 2013), *aff'd* (May 29, 2014). Unfortunately, even under this more lenient standard of review, the Court does not find that Plaintiff's amended complaint against Angela Courtwright states a claim upon which relief can be granted. Plaintiff's amended complaint, as it stands, fails to set forward sufficient direct or inferential allegations related to Courtwright and Counts 1–7. (ECF No. 29 at 3–4). In fact, Plaintiff's amended complaint merely lists Angela Courtwright as a party, who was "outside counsel who enforced communication restrictions and termination procedures." (*Id.* at 2).

Courtwright is not further referenced in Plaintiff's factual overview, nor is she referenced again under any of the counts in connection with Plaintiff's allegations.

Construing Plaintiff's statements in his favor, and with leniency, his complaint against Courtwright is insufficient to "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and thus is insufficient to survive a motion to dismiss under Rule 12(b)(6).

Courts have discretion to determine whether to dismiss a complaint or to grant plaintiff the opportunity to amend. *See United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003). In cases "where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Id*. (citing *EEOC v. Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir. 1993)). Denial of leave to amend, "may be appropriate, however, where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Id.* (citing *Morse v. McWhorter,* 290 F.3d 795, 800 (6th Cir. 2002)).

While the Court remains cognizant of Plaintiff's status as a pro se litigant, Plaintiff was already granted leave to file his amended complaint and more definite statement. (ECF No. 28). In the October 25, 2025 Order, Magistrate Judge Jolson highlighted that allowing Plaintiff's amended complaint to proceed "is only a preliminary determination," and "the Court has not ruled on the merits of Plaintiff's claims." (ECF No. 30 at 4). At bottom, the Court has already been generous with Plaintiff's pleadings, and allowing Plaintiff further amendment would be futile.

Based on the foregoing, Defendant Angela Courtwright's motion to dismiss is **GRANTED.**

### B. Motion to Dismiss by Defendants Southeast, Melissa Miller, Margaret Hittie, and Bill Lee

Defendants argue that Plaintiff's amended complaint against them should be dismissed because it is "nothing more than a smattering of conclusory allegations and speculative assertions, none of which properly plead any cognizable claim against Defendants." (ECF No. 38 at 2). Specifically, as to Counts I, II, and V (Title VII Retaliation, ADA Retaliation and Discrimination, and Retaliation and Discrimination under Ohio Rev. Code § 4112), Defendants argue that Plaintiff has failed to exhaust his administrative remedies. (*Id.* at 4). Defendants further argue that Plaintiff fails to plead any claim under the FMLA because the amended complaint fails to allege whether Plaintiff was even an employee eligible for FMLA protection. (*Id.* at 6). Third, Defendants argue that Plaintiff failed to plead a claim for FLSA retaliation because mileage expenses are not considered wages under the FLSA, and therefore, are not covered. (*Id.* at 7). Next, Defendants assert that Plaintiff failed to plead sufficiently a claim for defamation because the basis for Plaintiff's claim, the statements made by Southeast to the ODJFS, are privileged and cannot be used in any subsequent actions against Plaintiff. (*Id.* at 7–8).

In response to Defendants' motion, Plaintiff argues that: (1) the Magistrate Judge already "screened" Plaintiff's complaint and allowed it to proceed, which "sets the Rule 8 sufficiency posture; (2) Plaintiff's amended complaint "pleads actor-specific retaliation and corroboration;" (3) Plaintiff has exhausted administrative remedies; (4) The amended complaint alleges interference and "retaliatory timing" to Plaintiff's FMLA request, and Defendants' demand for "granular eligibility numbers" merits adjudication at Rule 12; (5) Plaintiff's FLSA retaliation claim is much broader than the argument that mileage is not wages, and alleges wage suppression and retaliatory pay; (6) even if some privilege applies to the ODJFS communications, "Defendants' categorical defense is premature at Rule 12;" and finally (7) Plaintiff's amended

complaint identify policy complaints and "the tight sequence of adverse actions," to exhibit wrongful termination in violation of public policy. (ECF No. 39 at 5–9). Plaintiff further argues that if the Court identifies any "curable pleading issue," that Rule 15(a)'s leave to amend is the proper remedy, not dismissal. (*Id.* at 7–8).

The Court will address each of the parties' issues in turn.

**1. Exhaustion of Administrative Remedies**

Defendants first argue that Plaintiff has failed to exhaust his administrative remedies with respect to Counts I, II, and V. A plaintiff asserting Title VII Claims must file a charge with the EEOC within 180 days of the alleged unlawful practice or within 300 days where the plaintiff first files with a state or local employment agency. *See* 42 U.S.C. § 2000e–5(e). Since Ohio is a deferral state only those allegedly discriminatory actions that occurred within the 300 days prior to the filing of the charge are actionable. *Perazzo v. Top Value Enterprises, Inc.,* 590 F.Supp. 428, 432 (S.D. Ohio 1984). Thus, the Court can only review Plaintiff's claim if: "(1) he explicitly file[d] the claim in an EEOC charge; or [(2)] the claim [could] be reasonably expected to grow out of the EEOC charge." *Pemberton v. Bell's Brewery, Inc.,* 150 F.4th 751, 761 (6th Cir. 2025) (quoting *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001)).

This requirement is not meant to be rigid, however, and "the EEOC complaint should be liberally construed to encompass all claims 'reasonably expected to grow out of the charge of discrimination.'" *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (citation omitted).

**a. Retaliation Under Title VII**

Defendants contend that there is nothing within Plaintiff's charge that was submitted to the EEOC to indicate that "Plaintiff engaged in any activity protected by Title VII such that a claim

for retaliation is supported. (ECF No. 38 at 4). Defendants further argue that the "gravamen" of Plaintiff's charge is the alleged mileage reimbursement, which Title VII does not account for. (*Id.*). Plaintiff, on the other hand, argues that "the charge and [amended complaint] together gave fair notice of protected activity and the retaliatory sequence." (ECF No. 39 at 6).

Plaintiff's charge to the EEOC checked the box for "retaliation" and stated that he "filed internal hr complaints about workplace misconduct, wage suppression, billing misclassification, public exposure of productivity [and] I was subject to escalating retaliation, forced to leave, denied mileage reimbursement, [and] terminated." (ECF No. 38 at Exh. A). Plaintiff was then issued his notice of right to sue from the EEOC on May 8, 2025. (ECF No. 6 at 4).

Plaintiff was terminated from Southeast on February 18, 2025. (ECF No. 29 at 2). On April 22, 2025, Plaintiff filed his charge, detailed above, with the EEOC and subsequently received his right to sue letter on May 8, 2025. (ECF Nos. 39 at Exh. A; 6 at 4). Based on that record, it appears to the Court that Plaintiff exhausted his administrative remedies with the EEOC for the Title VII claim of retaliation. Although Defendants argue that the "gravamen" of Plaintiff's charge is the claim for mileage reimbursement, that is not the only claim in the charge, and thus, Plaintiff's retaliation claim survives at least this procedural hurdle.

**b. Discrimination and Retaliation Under the ADA**

Defendants next argue that Plaintiff's Count II allegations for discrimination and harassment under the ADA are flawed because Plaintiff failed to exhaust his administrative remedies as to these claims. (ECF No. 39 at 5). Specifically, Defendants contend that Plaintiff failed to check the box on the EEOC charge for "Disability," and further, there is nothing within Plaintiff's narrative of retaliation related to any alleged disability. (*Id.*). As for Plaintiff's argument, he

again argues that "the charge and [amended complaint] together gave fair notice of protected activity and the retaliatory sequence." (ECF No. 39 at 6).

A plaintiff bringing employment discrimination claims under the ADA must first exhaust administrative remedies. *Jones v. Nat. Essentials, Inc.*, 740 F. App'x 489, 492 (6th Cir. 2018). This requirement is a condition precedent, so failure to exhaust administrative remedies properly constitutes a valid basis for dismissal. *Id*. "To properly exhaust administrative remedies under the ADA, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination." *Id*. (citing *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000); 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e–5(e)(1)). The plaintiff must then obtain a right-to-sue letter from the EEOC before initiating a lawsuit. *Jones*, 740 F. App'x at 492–93. As a general rule, a plaintiff may not pursue claims in a judicial proceeding that were not first raised in the EEOC charge. *See Jones v. Sumser Ret. Vill.*, 209 F.3d 851, 853 (6th Cir. 2000). That said, the "omission of a formal allegation in the EEOC filing is not always a fatal mistake." *Woodling v. GeoBuild, LLC*, No. 22-3499, 2023 WL 335283, at *2 (6th Cir. Jan. 20, 2023). The Sixth Circuit has held that a failure to include an explicit allegation in an EEOC charge does not automatically foreclose judicial review, provided the claim is reasonably within the scope of the agency's expected investigation. *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).

To satisfy the exhaustion requirement, the EEOC charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Younis v. Pinnacle Airlines, Inc*., 610 F.3d 359, 361 (6th Cir. 2010) (quoting 29 C.F.R. § 1601.12(b)). In assessing sufficiency, courts construe charges liberally, allowing plaintiffs to raise "claims that are reasonably related to, or that grow out of, the factual allegations in the charge." *Id*. at 362.

The judicial complaint is thus not strictly limited to the claims explicitly stated in the EEOC charge, but to those claims that are within "the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002); *Dixon*, 392 F.3d at 217. When the facts alleged in the EEOC charge would reasonably prompt the agency to investigate a different, uncharged basis for discrimination, the plaintiff is not barred from pursuing that claim in court. *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998).

In his timely filed EEOC charge, Plaintiff did not check the box for "disability" in the section identifying the basis for discrimination. (ECF No. 39 at Exh. A). Additionally, Plaintiff's description of the alleged discriminatory action did not include any facts or information relating to a disability, other health issues, or a request for FMLA leave. Thus, because Plaintiff did not check the box for "disability," and the substance of the factual narrative does not include any allegations that would provide notice of a potential disability claim, it does not fulfill the notice requirement under the ADA. *See Graham v. Planned Parenthood of Greater Ohio*, No. 2:24-CV-1524, 2025 WL 2663782, at *6 (S.D. Ohio Sept. 17, 2025) (finding that Plaintiff had exhausted her administrative remedies where her charge was sufficiently precise to encompass her ADA claims). Accordingly, Plaintiff's discrimination and harassment claims under the ADA are barred for failure to exhaust administrative remedies.

**c. Discrimination Under Ohio Rev. Code § 4112.02**

As for Plaintiff's claims for retaliation and discrimination under Ohio law, Defendants argue that Plaintiff failed to comply with Ohio Rev. Code § 4112.052, which requires those alleging a violation of § 4112.02 first to file a charge of discrimination with the Ohio Civil Rights Commission ("OCRC"). (ECF No. 38 at 5). Defendants acknowledge that Plaintiff did file a

charge with the EEOC, but that standard still requires Plaintiff's subsequent civil claim before the court to grow out of the factual allegations in the EEOC charge. Here, Plaintiff did not discuss Plaintiff's membership in a protected class within the definition of Ohio Rev. Code § 4112.02, nor did he allege how Defendants allegedly retaliated against him as a result. (*Id.* at 5–6). Plaintiff, again, plainly opines that "the charge and [amended complaint] together gave fair notice of protected activity and the retaliatory sequence," without any further argument. (ECF No. 39 at 6).

Like Plaintiff's ADA claim, Plaintiff has failed to exhaust his administrative remedies with respect to his claims for retaliation and discrimination under Ohio Rev. Code § 4112.02. A plaintiff alleging a violation of § 4112.02 must first file a charge of discrimination with the OCRC. Ohio Rev. Code § 4112.052(B)(1)(a). If the OCRC issues a notice of right to sue, or fails to do so within 45 days, the plaintiff may sue. *Elba v. Mac's Convenience Stores, LLC*, No. 2:23-CV-4108, 2025 WL 2645502, at *11 (S.D. Ohio Sept. 15, 2025), (citing Ohio Rev. Code § 4112.052(B)(1)(b)). Here, Plaintiff did not file a charge of discrimination with the OCRC, only with the EEOC, and as a result, he did not receive a right to sue for his claims under Ohio Rev. Code § 4112.02. Based on this record, Plaintiff's retaliation and discrimination claims are barred, as Plaintiff failed to exhaust the necessary administrative remedies.

**2. Title VII Retaliation Under 42 U.S.C. § 2000e-3**

Under Title VII employers are prohibited from "discriminat[ing] against any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A Plaintiff must show that he has suffered an adverse employment action, defined as a "materially adverse" change in the terms or conditions of employment because of the employer's action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000). Title VII also prohibits an

employer from retaliating against an employee because of that individual's exercise of protected conduct. 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case, Plaintiff must show:

> he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). In the Title VII context, "a plaintiff can survive a motion to dismiss if he 'present[s] facts that, based on the Court's common sense and judicial experience, somehow otherwise show that he has a plausible claim of discrimination' — even if he does not successfully plead plausibility under the *McDonnell Douglas* framework." *See Erikson v. Xavier Univ.*, No. 1:23-CV-66, 2024 WL 1156313, at *2 (S.D. Ohio Mar. 18, 2024) (quoting *Southall v. Ford Motor Co.*, 645 F. Supp. 3d 826, 834 (S.D. Ohio 2022)). "[S]o long as a plaintiff's complaint provides a defendant with fair notice of the basis [of his] claims, and an adequate factual basis for those claims, a plaintiff's claim of employment discrimination will survive a motion to dismiss." *Waters v. Drake*, 105 F. Supp. 3d 780, 804 (S.D. Ohio 2015) (cleaned up).

Here, Plaintiff's amended complaint alleges that his "protected complaints about wage and discrimination issues were followed within two weeks by investigation, lockout, and termination. All defendants had knowledge of his complaints." (ECF No. 29 at 3). Although Plaintiff fails to provide considerable factual detail in his allegations, the inference can be made from the allegations that Plaintiff does supply that he was terminated following his complaints to HR and supervisors regarding the Defendants' delay in mileage reimbursement. At the motion to dismiss stage, these allegations provide Defendants with a fair notice of the basis for Plaintiff's Title VII retaliation claim, and thus, the Court declines to dismiss Plaintiff's Title VII retaliation claim.

### 3. FMLA Interference and Retaliation Under 29 U.S.C. § 2615

Defendants also argue that Plaintiff has not asserted a valid claim under the FMLA because Plaintiff does not allege that he is an eligible FMLA employee. (ECF No. 38 at 6). Specifically, "he does not allege that he has the requisite 12 months of employment history with Southeast, a collective 1,250 hours of work within the applicable lookback period, or that his purported need for leave was covered by FMLA. (*Id.*). In response, Plaintiff argues that "Defendants' demand for granular eligibility numbers (months/hours) invites merits adjudication at Rule 12." (ECF No. 39 at 6).

To establish a *prima facie* case of retaliation under the FMLA, Plaintiff must show: (1) "he was an eligible employee"; (2) Southeast "was an employer as defined under the FMLA"; (3) he "was entitled to leave under the FMLA"; (4) he "gave proper notice of his intention to take leave"; and (5) Southeast "denied [him] [the] FMLA benefits to which he was entitled." *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

Here, Plaintiff's amended complaint alleges that "Plaintiff notified HR of a medical need for leave. HR interfered by scheduling conflicting meetings and terminating him before the leave began." As the Defendants argue, however, Plaintiff has not sufficiently alleged that he was an employee eligible for FMLA leave with the requisite 1,250 hours of employment. Further, even if Plaintiff was an eligible employee, it does not appear that Plaintiff has alleged that Southeast denied him the FMLA benefits to which is he was entitled, particularly where there are no facts alleged regarding Southeast's approval or denial of FMLA leave only that Defendants terminated him before the leave began.

Therefore, the Court finds that Plaintiff has not sufficiently stated a claim for relief under the FMLA.

### 4. FLSA Retaliation Under 29 U.S.C. § 215

Regarding Plaintiff's claim for FLSA retaliation, Defendants argue that Plaintiff's mileage expenses, even if they are work-related are not considered wages that are covered by the FLSA, and "any alleged complaints about mileage reimbursement cannot constitute protected activity under the FLSA." (ECF No. 38 at 7). In response, Plaintiff contends that "Defendants rely on 29 U.S.C. § 778.217 to sidestep retaliation. But Plaintiff's theory is broader: wage suppression; investigation used as pretext; and pay-processing actions closely following protected complaints.

The Fair Labor Standards Act makes it unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted ... any proceeding under or related to this chapter...." 29 U.S.C. § 215(a)(3). To establish a *prima facie* case of retaliation, an employee must prove: (1) she was engaged in a protected activity under the FLSA; (2) her exercise of this right was known by the employer; (3) she was the subject of an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action. *See Williams v. Gen. Motors Corp.*, 187 F.3d 553, 568 (6th Cir. 1999). Within the Sixth Circuit, for the purposes of protected activity, "the anti-retaliation provisions of the FLSA can be triggered by informal complaints." *Moore v. Freeman*, 355 F.3d 558, 562 (6th Cir. 2004).

Here, Plaintiff's amended complaint alleged that "Plaintiff's wage complaints triggered HR's 'investigation' and subsequent discharge, violating § 215(a)," resulting in Defendants acting with retaliatory intent. At the motion to dismiss stage, construing Plaintiff's statements in his favor, and with leniency, the Court finds that Plaintiff has adequately alleged a claim for FLSA retaliation above the speculative level. Defendants do not appear to refute in their motion that they were aware of Plaintiff's "wage complaints," or that they were only complaints in relation to his mileage

reimbursement such that they are not covered by the FLSA. Thus, Plaintiff's claim for FLSA retaliation survives Rule 12(b)(6).

**5. Common Law Defamation**

Next, Defendants argue that the sole basis for Plaintiff's defamation claim is Southeast's statements to the ODJFS made in response to Plaintiff's application for unemployment compensation benefits. (ECF No 38 at 7). Further, even if those alleged statements were made, they are subject to privilege and cannot be used in future proceedings or actions. (*Id.*). As for Plaintiff's defamation allegations, he states on February 18, 2025, "Defendants published false statements to ODJFS alleging 'dishonesty.' These statements…" (ECF No. 29 at 4).

Under Ohio law, to establish a claim for defamation, a plaintiff must prove: (1) the defendant made a false statement of fact; (2) such statement was defamatory, or, in other words, "ruinous to his reputation"; (3) the statement was published; (4) the publication proximately caused the plaintiff to suffer injury; and (5) the defendant acted with the required degree of fault in publishing the statement. *Toledo Heart Surgeons, Inc. v. Toledo Hosp.,* 154 Ohio App.3d 694, 798 N.E.2d 694, 696–97 (2003); *see also State ex rel. Sellers v. Gerken,* 72 Ohio St.3d 115, 647 N.E.2d 807, 810 (1995) ("defamation generally requires falsity, defamation, publication, injury, and fault"). The injury required to state a defamation claim is injury to the plaintiff's reputation. *Ashcroft v. Mt. Sinai Med. Ctr.,* 68 Ohio App.3d 359, 588 N.E.2d 280, 283 (1990) (stating that, to *962 establish a defamation claim, plaintiffs must demonstrate "the existence of a false publication causing injury to a person's reputation, or exposing him to public hatred, contempt, ridicule, shame or disgrace, or affecting him adversely in his trade or business"). Indeed, "[t]he gravamen of the tort of defamation is whether or not the plaintiff has been lowered in the eyes of his fellowman."

*Hersch v. E.W. Scripps Co.,* 3 Ohio App.3d 367, 445 N.E.2d 670, 678 n. 11 (1981) (citation omitted).

Even with the benefit of leniency, Plaintiff's allegations do not reach the 12(b)(6) threshold to state a claim for defamation. As an initial matter, under Ohio law, "[c]ommunications made during unemployment proceedings ... are subject to an absolute privilege, and may not be used in subsequent actions." Ganaway v. Marcolin, U.S.A., No. 1:18-CV-316, 2018 WL 6048019, at *4 (S.D. Ohio Oct. 29, 2018) (quoting *Barilla v. Patella*, 144 Ohio App. 3d 524, 534, 760 N.E.2d 898, 906 (2001)). Further, "this privilege has been codified in Ohio Rev. Code § 4141.21, which explicitly limits the use of information collected from employers and employees by the director of job and family services to the 'exclusive use ... of the department of job and family services in the discharge of its duties.'" (*Id.*). This alone precludes Plaintiff from stating a defamation claim.

**6. Wrongful Termination in Violation of Public Policy**

Finally, Defendants argue that Plaintiff has not properly set forth a claim for wrongful termination in violation of public policy because he fails to provide any detail on the contents of his purported "complaints about Medicaid billing integrity and client continuity of care." (ECF No. 38 at 8). In response, Plaintiff plainly contends that he "raised Medicaid billing integrity and client continuity of care concerns before termination." (ECF No 39 at 6).

To establish a cause of action for the tort of wrongful discharge in violation of public policy under Ohio law, the plaintiff must prove:

> That a clear public policy existed and was manifested in a state or federal constitution, statute, or administrative regulation, or in the common law ("the clarity element"); (2) That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy ("the jeopardy element"); (3) The plaintiff's dismissal was motivated by conduct related to the public policy ("the causation element"); and (4) The employer lacked an overriding legitimate business justification for the dismissal ("the overriding justification element").

*Collins v. Rizkana,* 73 Ohio St.3d 65, 652 N.E.2d 653, 657–58 (1995).

Here, Plaintiff's bare allegations simply cannot suffice to state a claim that survives a motion to dismiss. Although Plaintiff alleges that he raised "Medicaid billing integrity and client continuity of care concerns," Plaintiff fails to expand upon what those concerns were, the relevant public policies that Southeast was purportedly violating, or any additional substance. Simply put, the Plaintiff's amended complaint, which only alleges the sentence above regarding any violation of public policy, does not give the Court sufficiently detailed allegations to rise above a speculative level. Plaintiff's claim for wrongful termination should be dismissed.

## A. CONCLUSION

For the foregoing reasons, this Court **GRANTS** Defendant Angela Courtwright's Motion to Dismiss (ECF No. 37). Additionally, Defendants Southeast, Melissa Miller, Margaret Hittie, and Bill Lees' Motion to Dismiss (ECF No. 38) is **GRANTED in part** and **DENIED in part**. As to Plaintiff's claims for Title VII retaliation and FLSA retaliation, Defendants Southeast, Miller, Hittie, and Lees' motion is denied. As to Plaintiff's claims for ADA discrimination and retaliation, FMLA interference and retaliation, retaliation and discrimination under Ohio law, Defamation, and wrongful termination, Defendants' motion is granted.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 28, 2026**